MEMORANDUM OF LAW

FILED BY PG D.C.

JAN 07 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

HARLEM SUAREZ
REG. NO. 06262-104
USP LEE
P.O. BOX 305
JONESVILLE, VA 24263

GROUND ONE:

WHETHER MR. SUAREZ WAS COMPETENT TO STAND TRIAL (UNDERSTAND THE PROCEEDINGS PRESENTED TO HIM).

AT ANY TIME AFTER THE COMMENCEMENT OF A PROSECUTION FOR AN OFFENSE AND PRIOR TO THE SENTENCING OF THE DEFENDANT, OR AT ANY TIME AFTER THE COMMENCEMENT OF PROBATION OR SUPERVISED RELEASE AND PRIOR TO THE COMPLETION OF THE SENTENCE, THE DEFENDANT OR THE ATTORNEY FOR THE GOVERNMENT MAY FILE A MOTION FOR A HEARING TO DETERMINE THE MENTAL COMPETENCY OF THE DEFENDANT. WHILE THERE WAS A COMPETENCY HEARING PROVIDED TO MR. SUAREZ, THE DETERMINATION OF HIS COMPETENCY WAS WRONGLY DECIDED.

DOCTOR ARIAS, A CLINICAL PSYCHOLOGIST, TESTIFIED THAT HE HAD EVALUATED MR. SUAREZ ON A COUPLE OCCASIONS. (DE 190:12). HE STATED THAT A NON-VERBAL INTELLECTUAL MEASURE OF MR. SUAREZ'S I.Q. "PLACE[D] HIM IN WHAT IS CALLED THE BORDERLINE SLASH LOW AVERAGE RANGE." (190:13). HE ALSO STATED THAT MR. SUAREZ MENTAL PROBLEM MAY HAVE STEMMED FROM RECEIVING INSUFFICIENT OXYGEN DURING BIRTH. (DE 190:14). YET THE COURT STILL DETERMINED THAT THE DEFENDANT WAS COMPETENT TO UNDERSTAND THE PROCEEDINGS BEFORE HIM AND TO STAND TRIAL. DR. ARIAS ALSO TESTIFIED (1), OFTEN TIMES WHEN [AN] INDIVIDUAL RETREATS INTO FANTASY [IT] IS BECAUSE IT'S A VERY DIFFICULT TIME TO DEAL WITH REALITY.. SO FANTASY OFFERS THAT ESCAPE FROM REALITY... IN THIS PARTICULAR CASE, MR. SUAREZ'S FANTASY WAS FEELING POWERFUL, A FEELING OF RECOGNITION, A FEELING OF BEING ABLE TO BE NOTICED FOR SOMETHING OTHER THAN PAST FAILURES THAT HAVE OCCURED THROUGHOUT HIS LIFESTYLE. (DE 190:17-18) AND (2), THAT MOST LIKELY THAN NOT MR. SUAREZ'S MOTHER TALKED HIM OUT OF TAKING A PLEA DEAL TO A LESSER INCLUDED OFFENCE. (DE 190:20). MR. SUAREZ WAS NOT COMPETENT TO STAND TRIAL, IT IS WHY HE RELIED ON HIS MOTHER'S DECISION WITH NOT ACCEPTING A PLEA AGREEMENT.

FOR THE FOREGOING REASONS ABOVE, THIS COURT SHOULD VACATE MR. SURREZ'S CONVICTION AND REEVALUATE HIS COMPETENCY.

Ground Three: Whether Mr. Suarez provided material support or resources to a designated foreign terrorist organization.

Mr. Suarez was convicted of violating 18 U.S.C. 2339B(a)(1).

18 U.S.C. 2339B(a)(1) provides:
Whoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title or imprisoned not more than 20 years, or both, and, if the death of any person results, shall be imprisoned for any term of years or for life.

To violate this paragraph, a person must have knowledge that the organization is a designated terrorist organization (as defined in subsection (g)(6), that the organization has engaged or engages in terrorist activity (as defined in section 212(a)(3)(B) of the Immigration and Nationality Act [8 USCS 1182(a)(3)(B)]), or that the organization has engaged or engages in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal years 1988 and 1989 [22 USCS 2656f(d)(2)]).

It is clear that prior to the government's involvement of using an undercover informant, Mr. Suarez had no direct contact, involvements or coordination with a foreign terrorist organization. Neither of the two agents were actual "ISIS" members. Mr. Suarez simply downloaded publicly available videos and documents produced by ISIS. The evidence of his conduct cannot suffice to prove that he conspired, nor attempt to provide material support or resources to a foreign terrorist organization. Mr. Suarez's actions were not "in coordination with" or, for that matter, "at the direction of" ISIS. The requisite mental state for conspiracy is "knowledge of the basic agreements" and "an intent to commit the underlying substantive offense." See U.S. v. Garcia-Pastrana, 584 F.3d 351, 377 (1st Cir. 2009 (quoting U.S. v. Brandon, 17 F.3d 409, 428 (1st Cir. 1994)). Undercover officers never stated that they were in fact members of "ISIS". The Supreme Court has made clear that the Federal in question does not penalize associating with a foreign terrorist organization or even "vigorously promoting and supporting the political goals of such a group. See Holder v. Humanitarian Law Project, 130 S. Ct. 2730 (2010).

Mr. Suarez was operating from an apartment he shared with his parents. He created a

(2)

(3)

Facebook account under an alias in which he pretended to be a muslim and on which he re-posted propaganda from what appear to be ISIS. The was no contact or coordination with a foreign terrorist organization, he simply cut and pasted images and texts and re posted propaganda that he found online. Mr. Suarez's only contact was with government officals who claimed be muslims, not members of "ISIS."

According to Humanitarian Law project, 130 S. Ct. at 2728, this court must vacate the judgments of the courts.

(3)

GROUND FOUR:
WHETHER MR. SUAREZ, WITHOUT LAWFUL AUTHORITY, USED, THREATENED, OR ATTEMPTED OR CONSPIRED TO USE, A WEAPON OF MASS DESTRUCTION.

MR. SUAREZ'S CONDUCT DID NOT HAVE THE REQUITE IMPACT ON INTERSTATE COMMERCE AS REQUIRED BY FEDERAL LAW. INTERSTATE COMMERCE IS AN ESSENTIAL ELEMENT WITHIN STATUTE IN QUESTION.

18 U.S.C. 2332a(a)(2)(D) PROVIDES:

A PERSON WHO, WITHOUT LAWFUL AUTHORITY, USES, THREATENS, OR ATTEMPTS OR CONSPIRES TO USE, A WEAPON OF MASS DESTRUCTION; (2) AGAINST ANY PERSON OR PROPERTY WITHIN THE UNITED STATES, "AND" (EMPHISIS ADDED); (D) THE OFFENSE, OR THE RESULTS OF THE OFFENSE, AFFECT INTERSTATE OR FOREIGN COMMERCE, OR, IN THE CASE OF A THREAT, ATTEMPT, OR A CONSPIRACY, WOULD HAVE AFFECTED INTERSTATE OR FOREIGN COMMERCE.

THE TERM "INTERSTATE OR FOREIGN COMMERCE" INCLUDES ANY MOVEMENT OR TRANSPORTATION OF PERSONS, GOODS, WARES, MERCHANDISE, SECURITIES OR MONEY FROM ONE STATE INTO ANOTHER STATE, OR BETWEEN THE UNITED STATES AND ANY PLACE OUTSIDE THE UNITED STATES.

MR. SUAREZ NEIGTHER AFFECTED NOR, WOULD HAVE AFFECTED INTERSTATE OR FOREIGN COMMERCE WITH HIS CONDUCT. WHILE THE DEFENDANT DID IN FACT, ATTEMPT TO ACCEPT A BOMB AND MAKE USE OF IT, HIS CONDUCT WAS NEVER SAID NOR CONDUCTED OUTSIDE OF THE KEY WEST. THE SUPREME COURT HAS NOTED "THREE BROAD CATEGORIES OF ACTIVITY THAT CONGRESS MAY REGULATE" UNDER THE COMMERCE CLAUSE: 1) THE USE OF THE CHANNELS OF INTERSTATE COMMERCE; 2) THE INSTRUMENT-ALITIES OF INTERSTATE COMMERCE; AND 3) "ACTIVITIES HAVING A SUBSTANTIAL RELATION TO INTERSTATE COMMERCE... I.E., THOSE ACTIVITIES THAT SUBSTANTIALLY AFFECT INTERSTATE COMMERCE. UNITED STATES V. LOPEZ, 514 U.S. 549, 558-559, 115 S. CT. 1624, 1629-1630 (1995) (EMPHASIS); SEE ALSO MORRISON, 529 U.S. at 608-609, 120 S. CT. at 1749. TRIAL TESTIMONY OF ONE, EDWIN SWIFT WAS MERE SPECULATION AND SHOULD NOT HAVE BEEN ADMITTED. THE ONLY EVIDENCE THAT THE GOVERNMENT PRESENTED AS TO ANY POSSIBLE EFFECT ON INTERSTATE COMMERCE WAS FAR TOO SPECULATIVE (DE 199: 9)(DE 199: 5)). THE TESTIMONY FALLS FAR SHORT OF PROVING ANY POSSIBLE DIMINSHED EFFECT ON INTERSTATE COMMERCE, LET ALONE THE SUBSTANTIAL EFFECT REQUIRED BY THE SUPREME COURT'S DECISION IN LOPEZ. SEE LOPEZ, 514 U.S. AT 558-559, 115 S. CT. at 1629-1630; SEE MORRISON, 529 U.S. at 608-609, 120 S. CT. at 1749.

(4)

BECAUSE THE GOVERNMENT FAILED TO PROVE THE INTERSTATE NEXUS BEYOND A REASONABLE DOUBT AS REQUIRED BY 18 U.S.C. 2332a(a)(2)(D), THIS COURT MUST VACATE MR. SUAREZ'S CONVICTION AND REMAND THE CASE TO THE DISTRICT COURT.